86 N.Y.2d 259 (1995)
655 N.E.2d 146
631 N.Y.S.2d 105
The People of the State of New York, Respondent,
v.
Roy C. Letterlough, Appellant.
Court of Appeals of the State of New York.
Argued April 26, 1995.
Decided June 13, 1995.
Kent V. Moston, Hempstead, Matthew Muraskin, Brian P. Schechter and Miro F. Cizin for appellant.
Denis Dillon, District Attorney of Nassau County, Mineola (Judith R. Sternberg and Peter A. Weinstein of counsel), for respondent.
Lysaght, Lysaght & Kramer, P. C., Lake Success (Raymond E. Kerno of counsel), for Long Island Mothers Against Drunk Driving, amicus curiae.
Chief Judge KAYE and Judges SIMONS, SMITH and CIPARICK concur with Judge TITONE; Judge BELLACOSA dissents and votes to affirm in a separate opinion in which Judge LEVINE concurs.
*261 TITONE, J.
Our sentencing courts continually confront the important task of fashioning conditions of probationary sentences to rehabilitate those who have committed the often-habitual crime of driving while intoxicated. This case presents the Court with the question whether, as a condition of probation, a court may order the defendant to affix to the license plate of any vehicle he drives a fluorescent sign stating "CONVICTED DWI." We answer this question in the negative both because the condition is not reasonably related to defendant's rehabilitation, and, more generally, because, in the absence of more specific legislation, such a condition is outside the authority of the court to impose.
On December 10, 1991, defendant Roy Letterlough pleaded guilty to operating a motor vehicle while under the influence of alcohol as a felony (see, Vehicle and Traffic Law § 1192 [2]). This was defendant's sixth alcohol-related driving offense since 1971. Pursuant to the negotiated plea agreement, defendant was sentenced to five years' probation and fined $500, his license was revoked (see, Vehicle and Traffic Law § 1193 [2]), and he was ordered to obtain alcohol treatment as directed by the Department of Probation. As an additional condition not part of the initial plea agreement, the sentencing court directed that if the Department of Motor Vehicles should reissue a driver's license to defendant during the probationary period, he must affix to the license plates of any vehicle he drives a fluorescent sign stating "CONVICTED DWI." That condition specifically provides:
"16. DWI LICENSE PLATE ADDITIONS: If for any reason the N.Y. State Department of Motor Vehicles (DMV), or any other entity, restores full or conditional limited driving privileges to the Probationer prior to the full expiration of the term of Probation imposed by this Court, Probationer agrees as follows: He/she shall order and have installed at his/her sole cost and expense, within seven (7) days of such license reinstatement, two *262 (2) legible (day and night) metal, wood, plastic, or other durable and waterproof signs or plaques, affixed to the top or bottom of both the front and rear license plate of the vehicle which he/she may be driving (including owned, borrowed, leased, rented, etc.). Said signs shall state in fluorescent, large block letters `CONVICTED DWI.' Such signs shall be the full length of the license plate, and one-half (1/2) the width. Said signs shall be inspected and approved by the Probation Department within fourteen (14) days of such reinstatement, and at any time thereafter: they shall remain in place for the entire duration of the term of Probation imposed by this Court. Failure to install them, removal without permission, driving without them, or a police stop for any reason also noting the absence of the signs, shall be grounds  if proven in court  for a determination of VIOLATION OF PROBATION and immediate resentencing" (emphasis in original).
As to this condition, the court stated:
"I am not requiring that [the sign] be maintained permanently while others drive that vehicle, only when this individual drives that vehicle and he may design, should that contingency arise, any sort of a metal clip system so that it can be removed if anyone else in his family or friends decide they wish to drive his car with his consent.

"I only wish to warn the public of this and only have this sign apply to this Defendant" (emphasis added).
Defense counsel argued generally that the condition violated the State and Federal Constitutions, but declined an offer to withdraw his plea. In closing, the court stated: "This gentleman is 54 years of age and I do not wish to be the one that opens a newspaper and sees that this gentleman has caused an accident that has taken an innocent person's life because I did not do something that either warns the public or treated his problem. I hope to be doing both." The prosecution informed the court that defendant did not waive his right to appeal as part of the plea and the court specifically invited defendant to challenge the legality of the special condition on appeal.
*263 The Appellate Division affirmed. Citing two Florida cases (Goldschmitt v State, 490 So 2d 123; Lindsay v State, 606 So 2d 652), the Court found "no statutory or constitutional violation in the imposition of [the special condition requiring defendant to place the fluorescent signs on his car]" (205 AD2d 803, 804). A Judge of this Court granted defendant's application for leave to appeal as well as a stay of enforcement of the disputed special condition pending the determination of the appeal. Defendant here challenges the legality of that special condition, arguing, in part, that the court was not empowered to order it under Penal Law § 65.10.[1]
Our analysis of the propriety of the special license plate condition necessarily begins with a review of Penal Law § 65.10 which grants courts the authority to fashion conditions on a sentence of probation. The statute directs, as a general proposition, that "conditions of probation * * * shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so" (Penal Law § 65.10 [1]). The statute provides that the court "shall, as a condition of the sentence, consider restitution or reparation and may, as a condition of the sentence, require that the defendant" engage in or refrain from certain enumerated types of conduct (Penal Law § 65.10 [2]). The list includes directives to "[a]void injurious or vicious habits," "[r]efrain from frequenting unlawful or disreputable places," maintain suitable employment, undergo medical or psychiatric treatment, participate in alcohol or substance abuse programs, support dependents and meet family responsibilities, make restitution or reparation, perform community service, if under 21, reside in a suitable location and contribute to his or her own support, post bond or security for performance of any condition, and observe conditions as specified in an order of protection (see, Penal Law § 65.10 [2] [a]-[k]). Additionally, because the conditions of probationary sentences must be tailored to the particular defendant's case, and an exhaustive list of behavioral conditions would therefore have been impossible, the statute includes a catch-all provision which grants the court wide latitude to require the defendant to "[s]atisfy any other conditions reasonably related to his [or *264 her] rehabilitation" (Penal Law § 65.10 [2] [l] [emphasis added]).
A probationary sentence " `is a method of offering an offender an opportunity to rehabilitate himself, without institutional confinement, under the supervision of a probation officer and the continuing power of the court to use a more stringent sanction in the event the opportunity is abused' " (Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law art 65, at 204, quoting Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 25.00, at 260).
The overriding purpose of imposing a sentence of probation in lieu of other punishment is to rehabilitate "the convicted criminal by giving him appropriate treatment, in order to * * * return him to society so reformed that he will not desire or need to commit further crimes" (1 LaFave and Scott, Substantive Criminal Law § 1.5, at 32-33). As has been aptly noted, "[i]t is perhaps not entirely correct to call this treatment `punishment,' as the emphasis is away from making [the probationer] suffer and in the direction of making his [or her] life better and more pleasant" (id., at 33 [emphasis added]). The utility of rehabilitation as a vehicle for preventing criminal behavior "rests upon the belief that human behavior is the product of antecedent causes, that these causes can be identified, and that on this basis therapeutic measures can be employed to effect changes in the behavior of the person treated" (id., at 33). The focus of rehabilitation is primarily on healing the individual. Indeed, when a criminal act stems from a substance abuse problem, the use of sentencing conditions as a tool of rehabilitation is especially meaningful, since there are specific therapeutic options that may well ameliorate the underlying condition and thereby remove the condition associated with the criminal behavior (see, e.g., People v Berkley, 152 AD2d 788).
Penal Law § 65.10's delineation of typical probationary sentences reflects this rehabilitative aim. Significantly, the conditions enumerated in Penal Law § 65.10 (2) (a)-(k) are rehabilitative in nature, focusing on restoring the probationer to the status of a law-abiding member of the community. None have an inherently punitive aim, although many  such as those requiring a probationer to make restitution, refrain from frequenting "disreputable places" or to participate in an alcohol or substance abuse program  impose unpleasant restrictions *265 on the probationer's freedom and thus may have incidental punitive and deterrent effects (see, Brilliant, The Modern Day Scarlet Letter: A Critical Analysis of Modern Probation Conditions, 1989 Duke LJ 1357, 1372, and n 94 [probation conditions may serve punitive, rehabilitative and deterrent functions]).
Despite the inherent overlap and the difficulty in drawing lines between rehabilitative and punitive or deterrent sanctions, the Legislature did not mention punishment or deterrence as goals to be obtained through the imposition of probationary conditions pursuant to Penal Law § 65.10. Rather, Penal Law § 65.10 quite clearly restricts probation conditions to those reasonably related to a defendant's rehabilitation (Penal Law § 65.10 [2] [l]). Given the singular focus of the statute on rehabilitation of the individual, the Legislature clearly intended to authorize conditions of probation that are fundamentally "rehabilitative" in the sense of that word that distinguishes it from the societal goals of punishment or deterrence (see, 1 LaFave and Scott, Substantive Criminal Law § 1.5, at 31, 33).[2] Those goals are better served by other, more severe criminal sanctions, such as incarceration, and are reserved for society's more serious offenders. By contrast, probation is a criminal remedy generally considered useful only in cases where the offender does not present "a serious threat to the public" and where "imprisonment is not required as a deterrent to others" (Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 25.00 [1], at 261).
The degree of threat this defendant posed to society and whether he was an appropriate candidate for probation, given his criminal history, are questions not before this Court. Rather, our inquiry must focus solely on whether, having determined that probation was the appropriate criminal sanction for defendant, County Court acted within the parameters of the probationary sentencing structure authorized by Penal Law § 65.10.[3] *266 Here, the court appropriately directed, as a means of rehabilitating defendant, that he participate in a substance abuse program under the direction of the Probation Department. Such a measure is clearly geared towards rehabilitating a probationer because it relates to the correction of the underlying substance abuse problem at the root of defendant's criminal behavior. However, the same may not be said of the "CONVICTED DWI" sign condition. As the sentencing court made clear, its true design was not to advance defendant's rehabilitation, but rather to "warn the public" of the threat presented by his presence behind the wheel. Beyond that, public disclosure of a person's crime, and the attendant humiliation and public disgrace, has historically been regarded strictly as a form of punishment (see generally, Brilliant, The Modern Day Scarlet Letter: A Critical Analysis of Modern Probation Conditions, op. cit.). Undeniably, the condition of the DWI license plate sign imposed here was in large part intended to punish defendant, but the Legislature has determined that that purpose is better served by other penal sanctions not authorized by section 65.10.
The punitive and deterrent nature of the disputed "scarlet letter"[4] component of the probationary conditions here overshadows any possible rehabilitative potential that it may generate and thus is out of step with the various other devices specifically authorized by Penal Law § 65.10 (2) (a)-(k). Indeed, the public disclosure component of the order of conditions placed on defendant here may even negate any positive effect derived from the imposition of other therapeutic conditions, such as the requirement that defendant participate in an alcohol treatment program (see, People v Johnson, 174 Ill App 3d 812, 528 NE2d 1360; see also, 1 LaFave and Scott, Substantive Criminal Law § 1.5 [b], at 37). Notably, the forced advertisement of a probationer's DWI conviction is inconsistent with the need for confidentiality which is ordinarily deemed a mandatory component of such treatment programs (see, 15 NYCRR 134.16).
More importantly, the detailed condition imposed here is *267 objectionable because in fashioning it the trial court invaded the legislative domain. Under this State's jurisprudence, the creation of punishment for crimes rests within the realm of the Legislature (People v Byrne, 77 N.Y.2d 460, 467-468). A sentencing court simply cannot impose forms of punishment not authorized by statute for a particular crime. Accordingly, the obvious and overriding punitive component of the disclosure order here renders the condition one that must be prescribed by the Legislature.
Even if viewed as a measure to protect the public through warnings, the condition imposed here is one requiring legislative involvement because of the obvious need for State-wide uniformity and the kind of policy choices that only an elected Legislature can make (see, e.g., Sexual Offender Registration Act [Megan's Law], L 1994, ch 133 [New Jersey] [authorizing disclosure of a released defendant's prior convictions under certain controlled conditions]). Indeed, the statutory precedent from other jurisdictions that the People cite (see, e.g., Iowa Code Annot § 321J.4; Minn Stat Annot § 168.041 [6]; Ohio Rev Code Annot § 4503.231) serves only to demonstrate that the public disclosure of a probationer's conviction as a method of providing deterrence and warning to the public is a reasonable policy choice that can be made after testing through the deliberative process of a legislative body.[5]
Here, in addition to the more general need for uniformity and State-wide standards, there is a more particularized need for legislative involvement because of the safety and regulatory concerns that are raised by the notion of using license plates or vehicle accessories to advertise an individual's criminal history. Similar concerns have led the Legislature to authorize the Commissioner of the Department of Motor Vehicles to design the form, content and method of attachment of license plates, equipment and accessories used upon motor vehicles (see, Vehicle and Traffic Law §§ 300, 401 [3]; § 402 [1], [2]; see also, § 215 [b]).[6] The Legislature has specifically *268 directed that "[n]umber plates shall be kept clean and in a condition so as to be easily readable and shall not be covered by glass or any plastic material, and the view thereof shall not be obstructed by any part of the vehicle or by anything carried thereon" (Vehicle and Traffic Law § 402 [1] [emphasis supplied]). Manifestly, a judicial order to attach a special plate to the one prescribed by the Commissioner runs afoul of this directive and creates a very real impediment for traffic and law enforcement authorities who must depend on the readability of the information displayed on vehicular license plates. Moreover, a judicial order that gives the convicted motorist and the Probation Department discretion to determine the material and fastening to be used undermines the legislative command to use "reflectorized material according to specifications prescribed by the commissioner" (Vehicle and Traffic Law § 401 [3]) and gives rise to potential safety problems, including damage or injury caused by disengagement of the sign on the highway. As a practical matter, it is difficult to imagine how this or any defendant would safely construct the sign, which the court directed should be made of metal, wood or plastic and fastened by some type of "metal clip system." The distraction occasioned by special judicially ordered "scarlet letter" plates and the reactions of other motorists upon seeing them also poses a potential safety threat.[7]
Notably, although it was aware of the possibility of using special license plates (see, 1983 NY Senate Bill S 4861), our Legislature has chosen instead to address the public safety problem of recidivist drunk drivers by authorizing other types of law enforcement tools. A recent enactment authorizes courts to order a defendant, as a condition of probation, to install an "ignition interlock device" that attaches to the vehicle's steering mechanism and ignition (Vehicle and Traffic Law § 1198). The driver must then breathe into a device that chemically measures alcohol content both before the car can be started and at regular intervals thereafter. Clearly, no such legislative initiative would have been necessary if this type of condition could have been imposed by the courts on a case-by-case basis under Penal Law § 65.10's existing catch-all provision. *269 By parity of reasoning, the special license-plate condition should be available as a sentencing tool only after similar legislative deliberation and study. Additionally, when this statute was passed in 1988 (L 1988, ch 713), it specifically provided that use of the ignition interlock system may be directed as a condition of probation where the court determines that "such a condition is necessary to ensure the public safety" (Vehicle and Traffic Law § 1198 [3] [d]). Given that the Legislature explicitly added the promotion of public safety as a goal to be achieved by this new law-enforcement tool, the reference in the probation statute's catch-all provision to the lone goal of rehabilitation renders County Court's stated public safety motivation for imposing the special condition improper.
While innovative ideas to address the serious problem of recidivist drunk driving are not to be discouraged, the courts must act within the limits of their authority and cannot overreach by using their probationary powers to accomplish what only the legislative branch can do. Simply put, the creation of new criminal penalties and the regulation of highway safety cannot be achieved through the simple expedient of the probation statute's catch-all provisions (Penal Law § 65.10 [2] [l]). Since the "CONVICTED DWI" sign ordered here cannot under any view be regarded as a rehabilitative measure authorized by Penal Law § 65.10, and the creation of such a penalty out of whole cloth usurps the legislative prerogative, the condition, however well-intended, cannot be upheld.
Accordingly, the order of the Appellate Division should be reversed, the plea vacated and the case remitted for further proceedings in accordance with this opinion.
BELLACOSA, J. (dissenting).
On this appeal, defendant Letterlough disputes the authority of the sentencing court to attach a special condition to his sentence of probation for his conviction, on his guilty plea, in satisfaction of his sixth driving while intoxicated arrest. The court required that, during the five-year probationary period, the license plates of any car Letterlough might drive during his probation should bear the sign "CONVICTED DWI," but only if Letterlough pursued and obtained reinstatement of his automatically revoked license to drive.
The question of interpretation and application is whether this condition of probation is "reasonably related to [defendant's] *270 rehabilitation" (Penal Law § 65.10 [2] [l]) and, therefore, within the sentencing court's authority under Penal Law § 65.10 (see also, Penal Law § 65.10 [1]). Notably, the sentencing court unquestionably had the power to jail Letterlough for up to four years for the latest in his long history of driving while intoxicated arrests and convictions (see, Vehicle and Traffic Law § 1193 [1] [c]; Penal Law § 70.00 [2] [e]). Instead, the sentencing court granted the defendant's request for probation.
We are convinced that the rehabilitation-based sentencing authorization of Penal Law § 65.10 gives the court the discretionary authority, in a recidivistic case such as this, to impose and particularize the probation condition at issue. The punitive aspect and the alleged potential "stigma" or "heightened scrutiny" that could be associated with this reasonable condition should not create, in fact or as a matter of law, an absolute bar to such an appropriate, particularized rehabilitative probation condition.
Under the facts of this case, the sentencing court's imposition of the challenged condition, after careful consideration of defendant's woeful history and directly relevant circumstances, was "reasonably related" to defendant's possible rehabilitation, consistent with Penal Law § 65.10. Rehabilitation and punishment are not mutually exclusive goals or concepts in these circumstances, either under the governing statute or under progressive penological theory and practice (see, generally, Filcik, Signs of the Times: Scarlet Letter Probation Conditions, 37 Wash UJ Urb & Contemp L 291). Consequently, we respectfully dissent and vote to affirm the order of the Appellate Division, which had affirmed the sentencing court's conditional probationary alternative to defendant's incarceration.
The arrest, which has now led to this appeal, is defendant Letterlough's sixth alcohol-related arrest. In 1971, Letterlough pleaded guilty to driving while impaired and received a fine; the arrest was for driving while intoxicated. In 1972, he again pleaded down to guilty to driving while impaired, after a driving while intoxicated arrest; his license was suspended and he paid an increased fine. In 1973, he was at it again and was again caught. He pleaded guilty to the driving while intoxicated charge and was fined $100. Another driving while intoxicated arrest in 1973 led to a guilty plea to the charge as a felony, for which he was sentenced to 90 days in jail. The record reflects no criminal adjudications from that point until 1985 when, after being arrested for driving while intoxicated, *271 he pleaded guilty to the charge as a misdemeanor. He was placed on probation for three years and paid a $350 fine.
On September 21, 1991, Letterlough was arrested for the felony now at issue, when officers observed him driving his vehicle directly into oncoming traffic. He had a blood alcohol level of .139 and was charged with driving while intoxicated. On December 10, 1991, Letterlough pleaded guilty in Nassau County Court to operating a motor vehicle while under the influence of alcohol as a felony (Vehicle and Traffic Law § 1192 [2]; § 1193 [1] [c]). On January 22, 1992, County Court sentenced him to probation for five years and a fine of $500; his license was automatically revoked in accordance with Vehicle and Traffic Law § 1193 (2) (b). The court directed Letterlough to obtain alcohol treatment, should the Department of Probation require it (see, Penal Law § 65.10 [2] [e]). The sentencing court recited on the record that the incarceration and fines imposed on Letterlough for his many prior alcohol-related convictions had self-evidently not succeeded in rehabilitating his conduct and attitude about driving and drinking. The court thus attached the "CONVICTED DWI" license plate condition to his probation. Letterlough accepted the special condition, under protest; expressly declined the court's offer to withdraw his guilty plea; and appealed the sentence. Thus, he conjures up the apt axiom of one having one's cake and eating it, too.
The Appellate Division affirmed, stating that no statutory or constitutional protection was violated by imposing the condition of probation (205 AD2d 803, 804). A Judge of this Court granted Letterlough this further appeal.
The Legislature gives sentencing courts their range and scope of permissible conditions of probation in Penal Law § 65.10:
"1. In general. The conditions of probation * * * shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him [or her] to do so.
"2. Conditions relating to conduct and rehabilitation. When imposing a sentence of probation * * * the court * * * may, as a condition of the sentence, require that the defendant: * * *

"(l) Satisfy any other conditions reasonably related to his [or her] rehabilitation" (emphasis added).
*272 The sentence of probation " `is a method of offering an offender an opportunity to rehabilitate * * * without institutional confinement, under the supervision of a probation officer and the continuing power of the court'" (Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law art 65, at 204 [emphasis added], quoting Penal Law § 65.00, and citing Commn Staff Notes reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 25.00, at 260). Section 65.10 of the Penal Law lists a nonexclusive set of permissible conditions which can be imposed with probation, and then grants a catch-all authority to the court to impose conditions, so long as they are "reasonably related to [defendant's] rehabilitation" (Donnino, op. cit., at 208; Penal Law § 65.10 [2] [l]; see also, Penal Law § 65.10 [1]).
Defendant Letterlough argues that the specially suited probation condition imposed for his conviction and criminal record  affixing a "CONVICTED DWI" notation to the license plates of any car he might drive during the probationary period  is not reasonably related to rehabilitation. Finding the condition "in large part" punitive, the majority conclude that the condition can serve no rehabilitative purpose (majority opn, at 266). We disagree. In the most practical terms, defendant might refrain from a given temptation and get in the habit of not drinking and driving, precisely because such a legend might subject Letterlough to heightened scrutiny by civilian drivers at risk and law enforcement personnel (compare, Ayres, Big Gains Are Seen in Battle to Stem Drunken Driving, NY Times, May 22, 1994, section 1, at 24, col 2 [Jay Winsten, director of the Harvard Center for Health Communication, stating that it is the knowledge that they are under close police scrutiny that has caused younger drivers to choose designated drivers]). Contrary to the majority's view, on this basis alone, the statutory prerequisite is met, as applied to this case (see, Penal Law § 65.10 [2] [l]; [1]).
We respectfully disagree with the majority's proposition that the probation condition at issue, under the circumstances of this case, cannot qualify as rehabilitative under the pertinent authorizing statute (majority opn, at 265). The sentencing environment does not abide a theoretical purity that would cabin "punishment" and "rehabilitation" into such discrete, mutually exclusive universes. In the complex world of penology, sociology and human behavior, one could hardly imagine the actuality of a purely rehabilitative condition, no less *273 countenance a legal principle that would require such unattainable segregation. Indeed, the majority admit as much, recognizing the "inherent overlap and the difficulty in drawing lines between rehabilitative and punitive or deterrent sanctions" (majority opn, at 265). Notwithstanding this acknowledgement, the majority cursorily conclude that the Legislature could not have intended punishment or deterrence as goals of probation (majority opn, at 265). Curiously, they do so, even recognizing that certain enumerated probation conditions expressly authorized by the Legislature have "punitive and deterrent" effects (majority opn, at 264-265).
Contrary to the view propounded by the majority, the Legislature did not bar sentencing courts from imposing probation conditions which have some punitive or deterrent consequences. Moreover, the fine judicial line that the majority draws between "unpleasant restrictions on the probationer's freedom * * * [that] have incidental punitive and deterrent effects," which they find permissible (majority opn, at 264-265), and those which are "overshadow[ingly]" of a "punitive and deterrent nature" (majority opn, at 266) and, hence, impermissible, is simply unsupported by the Legislature's broad grant of discretion to the sentencing court. One of the long-recognized, accepted goals of punishing unlawful behavior is to provide an incentive for the offender to reform and behave (Kelley, Sentenced to Wear the Scarlet Letter: Judicial Innovations in Sentencing  Are They Constitutional?, 93 Dick L Rev 759, 780-781). The legislative sentencing prescription in Penal Law § 65.10  that the condition be reasonably related to rehabilitation  contains no express or implied prohibition against some punitive or deterrent consequence. Thus, the punishment and rehabilitative features of this probation condition may lawfully coexist.
Instead, the rule emanating from this case effects a sentencing regression, which is further compounded by restricting the sphere of permissible rehabilitative conditions to only those which would address and cure defendant's alcoholism (majority opn, at 264). Curbing alcoholism or drinking  the "root" causes of defendant's persistent criminal conduct  is not the only "rehabilitative" goal under Penal Law § 65.10. Rather, when one addresses the conduct at issue here  defendant's drinking and driving  one immediately and naturally recognizes that a reasonable condition which might induce defendant to refrain from driving while intoxicated is, in part at least, "rehabilitative" within the meaning of Penal Law § 65.10 *274 (see, Filcik, Signs of the Times: Scarlet Letter Probation Conditions, 37 Wash UJ Urb & Contemp L 291, 307-308 [stating that where statutes provide that sentencing courts may impose conditions "reasonably related to (defendant's) rehabilitation," "(t)his * * * allows the trial judge to create and impose individualized conditions, such as `scarlet letter' conditions," with the court's discretion being "limited only by the `reasonableness' requirement"  namely, that the special conditions be "careful(ly) plann(ed) to meet the defendant's needs"; citing as examples of such reasonable conditions the "heightened scrutiny" type of conditions  publishing apologies in the newspaper, wearing taps on the bottom of shoes, affixing "DWI" bumper stickers to cars]; Kelley, Sentenced to Wear the Scarlet Letter: Judicial Innovations in Sentencing  Are They Constitutional?, 93 Dick L Rev 759, 780 [stating that "(t)he theory of rehabilitation focuses on providing the offender with appropriate treatment in order to modify his antisocial behavior into acceptable conduct" (emphasis added)]).
Penal Law § 65.10 even specifies that conditions of probation "shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him [or her] to do so" (Penal Law § 65.10 [1]). Applied to the instant case, that expansive, preambled direction is not about the disease of alcoholism, but about criminal conduct and prevention of it by changing criminal propensities. The Penal Law does not criminalize drinking; nor is it a crime to have a drinking problem. The crime is driving while intoxicated. Consequently, this defendant particular, narrowly tailored condition should unquestionably qualify on this record as "reasonably related" to rehabilitation and reasonably necessary to help defendant start being "law abiding" (Penal Law § 65.10; see also, Kelley, Sentenced to Wear the Scarlet Letter: Judicial Innovations in Sentencing  Are They Constitutional?, 93 Dick L Rev 759, 781 [stating "(w)arning signs act as a `Pavlovian' behavior modification technique. Each time the offender encounters the sign, he is cognizant of his activity and the illegality of that behavior. The sign reinforces upon the offender that this behavior is unacceptable * * * (and that) society( ) (is) determin(ed) to see this behavior condemned"]). The majority expression and analysis inappropriately segregate the prohibited combined drinking and the driving, thus ignoring the criminal component to which the rehabilitative probation condition is reasonably directed.
The sentencing court's decision in the instant case is buttressed by the fact that other, more traditional, sanctions *275 failed repeatedly with this defendant. We know he was caught for six driving while intoxicated incidents over the last 20 years. How often he has driven under the influence of alcohol without being caught and taken off the road is unknown. The majority pay little heed to the defendant's felony-level conduct and six-time driving-while-intoxicated arrests as not constituting " `a serious threat to the public' " (majority opn, at 265). To the contrary, however, defendant's criminal record is certainly not very reassuring to the public or to a sentencing Judge, who wished to retain some measure of control while allowing defendant to stay out of jail (see, Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law art 65, at 204 [noting that probation subjects defendant to the " `continuing power of the court' "]). Indeed, the sentencing court noted that the usual and available sanctions had not succeeded in altering defendant's illegal and antisocial dangerous drinking and driving habits. The defendant nitpicks at the court's statement on the record, arguing that the court was motivated by public safety concerns. First, there is nothing inherently wrong about that. Besides, even if this part of the court's rationale were questionable, the court also explicitly recited defendant's failure at all other rehabilitative modes of sentencing, including jail and fines. The court then stated that it imposed the special condition as a means to help defendant overcome his dangerous drinking and driving problem and propensity. That is record-based satisfaction of the statute's rehabilitation hook.
Our rationale, which would endorse the sentencing court's particular sentence under these circumstances, also finds support in some precedents from other jurisdictions. In Ballenger v State (210 Ga App 627, 628-629, 436 SE2d 793, 794-795), the Georgia Court of Appeals upheld the trial court's imposition, as a condition of probation, that defendant wear a fluorescent pink plastic bracelet imprinted with the words "D.U.I. CONVICT." The court's ruling rested predominantly, if not exclusively, on the rehabilitative aspect of the condition:
"Being jurists rather than psychologists, we cannot say that the stigmatizing effect of wearing the bracelet may not have a rehabilitative, deterrent effect on [defendant]. * * * Certainly the fines and/or incarceration this defendant received in connection with his numerous previous driving under the influence and habitual violator convictions *276 did not succeed in rehabilitating him" (210 Ga App, at 629, 436 SE2d, at 794-795).
There, as here, the repeated offenses by defendant and the history of traditional sanctions that simply did not succeed in rehabilitating him warranted imposition of the more innovative rehabilitative condition (contrast, People v Johnson, 174 Ill App 3d 812, 528 NE2d 1360 [invalidating condition that defendant place mug sheet and apology in paper where defendant had no prior criminal record]).
The Florida District Court of Appeal has also held that potentially stigmatizing probation conditions are not fundamentally contradictory to rehabilitative goals (Lindsay v State, 606 So 2d 652; Goldschmitt v State, 490 So 2d 123). In Lindsay v State (supra), the court upheld, as a condition of probation, the requirement that defendant place an ad in the newspaper consisting of defendant's mug shot, name, and caption "DUI  CONVICTED" (606 So 2d, at 654, 656-657, supra). The court specifically rejected defendant's argument that the potential resulting stigmatization contravened the rehabilitative purpose of the probation statute. To the contrary, the court found that the "deterrent, and thus the rehabilitative, effect of punishment may be heightened if it `inflicts disgrace and contumely in a dramatic and spectacular manner' " (id., at 656, quoting United States v Anderson Co., 698 F.2d 911, 913 [8th Cir]; see also, Goldschmitt v State, 490 So 2d 123, supra [Florida District Court of Appeal, upholding as "rehabilitative" a condition of probation that defendant's vehicle bear a bumper sticker reading "CONVICTED D.U.I  RESTRICTED LICENSE"]).
While these courts have upheld conditions far more intrusive than the one at issue here, and while we do not broadly approve such sanctions, the reasoning remains instructive. These cases support the core rationale that (1) any condition of probation must "bear some relationship to the nature of the offense of conviction and should have some reasonable rehabilitative basis" (Goldschmitt v State, 490 So 2d, at 125, n 3, supra); and (2) punitive aspects of a probation condition are not, as a matter of law, fundamentally contradictory to rehabilitative goals.
Moreover, the instant case does not present the situation where an overly broad, peculiarly personal, or onerous condition has been imposed (see, e.g., People v Hackler, 13 Cal App 4th 1049, 16 Cal Rptr 2d 681 [invalidating probation condition *277 requiring defendant to wear T-shirt with bold statement of his felony theft probationer status at all times while defendant was outside his living quarters]). The probation condition at issue here affects defendant only in the definitive and distinctive category of human activities to which defendant's conviction pertains, namely, operating a motor vehicle if he gets his license back. Only if defendant pursues reinstatement of his driving privileges during the probationary period does the condition of probation ever spring into being. Thus, this condition of probation does not encompass areas of privacy unrelated to the offense; nor does the condition impose constraints on some basic right or ability to function in society (contrast, People v Hackler, supra). The condition, tailored directly to the activity of this defendant's repeated illegal and antisocial conduct, is designed to and may assist him in starting to lead a more "law-abiding life" (see, Penal Law § 65.10 [1]).
In stark contrast to the empirically irrefutable threat posed by drunk drivers, the probation condition at issue poses none of the danger to the public posited by the majority (majority opn, at 267, 268). The spectre of flying accessories or distractive special plates, in any event, hardly compares to the dangers from incorrigible drunk drivers, who are responsible for causing an alcohol-related death every 20 minutes (see, Landstreet, The Drinking Driver: The Alcohol Safety Action Programs, at 3-4 [1977]). In jurisdictions that have expressly authorized comparable probationary conditions, or where the courts have upheld such conditions under general grants of authority, these speculative concerns have been given no credence. Moreover, they simply have no bearing on the question of the discretionary authority of sentencing courts to rule in accordance with legislatively delegated power.
Most importantly, too, the issue is not whether each of us would personally favor or impose such a condition if acting as a sentencing Judge. That is simply not the question before us. The only issue we face is whether the Legislature has allowed sentencing Judges discretion in an appropriate case to impose such conditions. We conclude that it did and that, under these particularly egregious circumstances, the sentencing court did not abuse its discretion.
In using generously appropriate discretionary phraseology, the Legislature contemplated that sentencing courts would fashion conditions of probation based on the particular circumstances *278 of a defendant's record. Defendant's per se challenge, upheld by this Court, contradicts that legislative mandate and, instead, handcuffs the sentencing courts, including in cases where traditional sentencing approaches have been repeatedly tried and failed. If statutory construction compels such a result, then the solution for the future is simple: jail. Thus, defendant's victory here is a defeat for progressive sentencing for defendants down the road. Jail and regressive sentencing practices are clearly not what the Legislature had in mind by enacting Penal Law § 65.10 (cf., Mem of NY City Mayor Koch supporting L 1978, ch 500 [statute regarding conditioning probation on performing community service work], Bill Jacket, L 1978, ch 500 [noting concerns motivating and justifying such condition, including "current lack of alternatives to short but costly jail sentences"]).
The majority nullify the probation condition at issue on absolute, per se, matter of law bases and diminish the authority invested in sentencing courts by the Legislature. The striking irony is that while the Legislature in this instance has expanded judicial sentencing discretion (contrast, Penal Law § 65.10 [1] [2], [l], with Penal Law § 70.04 [2], [3]; Penal Law § 70.06 [2], [4]), the Judiciary itself withdraws from sentencing courts the discretionary flexibility to impose reasonably related conditions to probation that the sentencing court and Appellate Division found reasonably necessary to assist or insure a law-abiding turnaround by this defendant.
Order reversed, defendant's plea vacated and case remitted to County Court, Nassau County, for further proceedings in accordance with the opinion herein.
NOTES
[1] Defendant's failure to argue at sentencing that the County Court was not empowered to impose the special DWI license plate condition under Penal Law § 65.10 does not impede our review of that claim because it involves the " `essential nature' of the right to be sentenced as provided by law" (see, People v Fuller, 57 N.Y.2d 152, 156).
[2] Indeed, when the Legislature enacted Penal Law § 65.10 in 1965 (L 1965, ch 1030), it was likely influenced by the then-prevailing penological premise that individuals could be rehabilitated or therapeutically "cured" of their criminal tendencies and that the remedy of probation  intended solely for less serious offenders  was meant to bring about such rehabilitation. Importantly, Penal Law § 65.10 is a near replica of the 1962 enactment of Model Penal Code § 301.1, which is contained in the part entitled "Treatment and Correction" (emphasis added).
[3] The dissent's suggestion that the punitive and deterrent features of the special condition here are warranted in light of defendant's recidivism and the failure of prior criminal sanctions (dissenting opn, at 276) is more appropriately directed at the propriety of the mode of punishment selected here  e.g., probation versus incarceration  and the punitive goals sought to be achieved thereby.
[4] See, Hawthorne, The Scarlet Letter (Bantam Classic ed 1986).
[5] Significantly, there was an initiative in our own State Legislature to consider the use of special license plates to identify individuals formerly convicted of DWI offenses. Under Senate Bill S 4861 (1983), the Commissioner of Motor Vehicles would have been directed "to study and investigate [the] feasibility" of that proposal. The measure was not adopted.
[6] For example, the Commissioner is required to "adopt standards and specifications * * * for the size, design and mounting of [the official] slow-moving vehicle emblem" (Vehicle and Traffic Law § 375 [36] [a] [emphasis added]; see also, 15 NYCRR 68.5) and to regulate the use and placement on vehicles of driving-school or student-driver signs (see, 15 NYCRR 76.11 [d] [3]).
[7] While we are undoubtedly aware of the obvious dangers caused by drunk drivers, the attachment of a "CONVICTED DWI" sign to a car also presents real public safety concerns which require legislative regulation and do not deserve to be lightly dismissed (see, dissenting opn, at 277).